**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

US BANK, N.A.,

Plaintiff,

vs.

BACARA RIDGE ASSOCIATION,

Defendant.

2:15-cv-00542-RCJ-CWH

**ORDER**

This case arises out of an HOA foreclosure sale. Pending before the Court are cross motions for summary judgment. The Court grants summary judgment to Plaintiff on the issue of pre-sale redemption of the superpriority piece of Defendant's lien and declines to rule on the commercial reasonableness issues.

**I. FACTS AND PROCEDURAL HISTORY**

On or about December 29, 2005, non-party Hugo Avina purchased real property at 6146 Glenborough Street, North Las Vegas, Nevada, 89115 (the "Property"), giving non-party Countrywide Home Loans, Inc. a promissory note for $239,950 secured by a deed of trust (the "DOT") against the Property. (Compl. ¶¶ 5, 6, 12, ECF No. 1). Plaintiff US Bank, N.A. succeeded to the note and deed of trust as of June 13, 2014. (*Id.* ¶ 14). The note is in default, and

Plaintiff intends to foreclose, but Defendant Bacara Ridge Association's foreclosure based on delinquent HOA assessments has put a cloud on Plaintiff's deed of trust. (*Id.* ¶¶ 16–18).

On November 5, 2009, Defendant recorded a notice of delinquent assessment lien, indicating $796.75 in past due assessments, interest, costs, penalties, and collection and lien costs. (*Id.* ¶¶ 21–22). Defendant recorded a second notice on August 5, 2010, indicating a new total of $1,893. (*Id.* ¶¶ 24–25). On September 23, 2010, Defendant recorded a release of the second notice as having been "in error." (*Id.* ¶ 27). Presumably, the first lien remained unaffected. The same day, Defendant recorded a notice of default and election to sell under homeowners association lien (the "NOD"), indicating that $2,686.25 was due for "past due payments plus permitted costs and expenses." (*Id.* ¶ 30). The NOD did not identify the superpriority piece of the lien. (*Id.* ¶ 32). On February 15, 2011, Defendant recorded a notice of trustee's sale ("NOS"), indicating a sale on March 18, 2011 based on $3,923.17 in past due assessments and "reasonable estimated" costs, expenses, and advances." (*Id.* ¶¶ 34–36). None of the notices or other recorded documents indicated the amount of the superpriority piece of the lien or how the beneficiary of a first mortgage could satisfy it. (*Id.* ¶¶ 40–44). On December 3, 2010, after the NOD was recorded but before the NOS was, Plaintiff's agent tendered $416.25 (nine months' worth of regular assessments) to Defendant in order to satisfy the superpriority piece of the lien, but Defendant rejected the tender. (*Id.* ¶ 46–47, 69). Defendant purchased the Property at its own sale on or about October 21, 2011 for $6,156.97, which was approximately 2.5% of the unpaid principal balance on the note. (*Id.* ¶¶ 49–53).

Plaintiff sued Defendant in this Court seeking a declaration that the trustee's sale did not extinguish the DOT because: (1) the superpriority piece of Defendant's lien was satisfied before the sale; (2) the recorded notices were legally insufficient; and (3) the sale was commercially

unreasonable. Plaintiff requests injunctive relief against the transfer or encumbrance of the Property accompanied by any claim that the Property is free of the DOT, as well as an injunction requiring Defendant to pay all taxes, insurance, and HOA dues during the pendency of the action. Plaintiff also brought a claim for unjust enrichment.

Defendant moved to dismiss, or, in the alternative, for summary judgment. The Court dismissed the unjust enrichment claim and the claims that the HOA foreclosure was constitutionally and statutorily improper, with leave to amend, and denied the motion as to the commercial reasonableness issue. Plaintiff has not amended but has moved for offensive summary judgment based on tender of the superpriority piece and commercial unreasonableness. Defendant has filed a countermotion for summary judgment.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court needn't consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely

colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III. ANALYSIS

### A. Tender of the Superpriority Piece

For the purposes of lien priority as against a first deed of trust, an HOA lien consists of two distinct "pieces," only one of which is senior to a first deed of trust (but both of which are senior to all other liens):

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

*SFR Invs. Pool 1, LLC v. U.S. Bank*, N.A., 334 P.3d 408, 411 (Nev. 2014). The superpriority piece does not include collection fees or costs. Nev. Rev. Stat. § 116.3116; *Horizons at Seven Hills Homeowners Assoc. v. Ikon Holdings, LLC*, 373 P.3d 66, 72 (Nev. 2016) ("Taking into consideration the legislative intent, the statute's text, and statutory construction principles, we conclude the superpriority lien granted by NRS 116.3116(2) does not include an amount for collection fees and foreclosure costs incurred; rather it is limited to an amount equal to the common expense assessments due during the nine months before foreclosure.").[1]

---

1 An amendment to the statute effective October 1, 2015 (after the events at issue in the present case) added certain fixed collection costs to the superpriority piece. *See* Nev. Rev. Stat.

Plaintiff has adduced evidence that on December 2, 2010 its agent Miles, Bauer, Bergstrom & Winters, LLP tendered a check to Defendant's agent Nevada Association Services, Inc. for $416.25, which was nine months' worth of regular assessments. (*See* Miles Aff. ¶¶ 7–8, ECF No. 18-6; Bacara Ridge Statement of Account, ECF No. 18-6, at 11 (indicating monthly assessments of $46.25); Check, ECF No. 18-6, at 16 ($416.25 "to cure HOA deficiency")). Plaintiff has therefore satisfied its initial burden to produce evidence that if unrebutted would entitle it to a directed verdict on the issue of whether the superpriority piece of the lien was redeemed prior to the sale on March 18, 2011. Defendant has not adduced any contrary evidence to satisfy its shifted burden. It has adduced only copies of the CC&R, the deed to Avina, the DOT, and various foreclosure-related documents. Defendant argues that the tender was a "conditional settlement offer" but adduces no evidence tending to show that. The Court therefore grants summary judgment to Plaintiff on this issue. Because the tender of the superpriority piece prior to sale immediately extinguished the superpriority piece of the HOA lien, the sale proceeded purely on the subpriority piece, which was junior to the DOT, and the DOT was therefore not extinguished at the sale.

**1. Tender Equals Payment**

Tender occurs when a party makes an amount available without conditions. *Tender*, Black's Law Dictionary 1696 (10th ed. 2014) ("1. A valid and sufficient *offer* of performance; specif., an *unconditional offer of money* or performance . . . ." (emphases added)). The case law is in accord. *See, e.g.*, *Walker v. Houston*, 12 P.2d 952, 953 (Cal. 1932) ("'Tender' is an offer of performance, not performance itself."). There is no genuine dispute that Plaintiff tendered the full superpriority piece prior to the sale. The check tendered was an unconditional order to pay

---

116.3116(3)(c), (5) (2015).

money; that is part of the very definition of a check under the law of commercial paper. *See* Nev. Rev. Stat. § 104.3104. Defendant does not appear to argue that it did not receive the check or that the check was defective. It only argues that the check was a "conditional settlement offer." But a reasonable jury could not interpret the evidence that way. The check was an unconditional order to pay money, permitting Defendant to immediately demand and receive cash from the draftee in the amount indicated on the check without any further action or consent by Plaintiff.

**2. Tender Immediately Extinguishes a Lien, Even if Rejected**

It was settled law before Nevada even became a state that timely and complete tender immediately discharges a lien against real property, even if the tender is rejected, although the lienor remains entitled to repayment of the debt. *See Kortright v. Cady*, 21 N.Y. 343 (1860); *id.* at 347 (opinion of Davies, J.) ("The rule in England was therefore ancient and well settled, that [timely] payment . . . extinguished the interest of the mortgagee in the lands mortgaged; and tender and refusal at the same time produced the same result. . . . Tender and refusal are equivalent to performance."); *id.* at 366 (opinion of Comstock, C.J.) ("We have, then, only to apply an admitted principle in the law of tender, which is, that tender is equivalent to payment as to all things which are incidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the very thing tendered, but he does lose all collateral benefits or securities."). As Justice Davies noted, the rule can cause no unfair detriment to a lienor:

> If the mortgagor does not tender the full amount due, the lien of the mortgage is not extinguished. The mortgagee runs no risk in accepting the tender. If it is the full amount due, his mortgage lien is extinguished and his debt is paid. This is all he has a right to demand or expect, and all he can in any contingency obtain. His acceptance of the money tendered, if inadequate and less than the amount actually due, only extinguishes the lien *pro tanto*, and the mortgage remains intact for the residue. A much greater hardship might be imposed, and serious injury be produced, by holding that the mortgagor cannot extinguish the lien of the mortgage by a tender of the full amount due. It has never occurred to any judge to argue that a pawnee was in great peril, and in danger of losing the

> benefit of his pawn, by the enforcement of the well settled rule, that a tender of the amount of the loan and interest, and refusal, extinguished the lien on the pawn. Littleton well says, that it shall be accounted a man's own folly that he refused the money when a lawful tender of it was made to him. The only effect upon the rights of the mortgagee is, that the land or thing pledged is released from the lien, but the debt remaineth.

*Id.* at 354 (opinion of Davies, J.). The sole dissenting justice in *Kortright* disagreed only as to whether a mortgagor whose tender made after the day designated in the mortgage (but still before sale) is rejected must maintain his willingness and ability to perform in order to maintain the right of redemption to the point of sale, none of which is at issue in the present case; he agreed that a timely tender immediately discharges a lien, whether accepted or rejected. *See id.* at 368 (Welles, J., dissenting) ("If a tender has the effect in any case to release the lien, it produces that effect the moment it is made, whether accepted or refused. If accepted, it is a payment; if refused, it is the folly of the holder of the mortgage, and the lien is gone and cannot be restored by his subsequent change of mind and offer to receive the money tendered.").

By statute, the common law of England is the default common law in Nevada absent conflict with federal or state law. Nev. Rev. Stat. § 1.030. The Court is aware of no state or federal law in conflict with the ancient English common law rule recognized in *Kortright*. Nor is there any basis to believe the Nevada Supreme Court would change course today. The high courts of other states to consider the issue have reaffirmed the *Kortright* rule, and the modern commentators have noted that. *See, e.g.*, *Leet v. Armbruster*, 77 P. 653, 671–72 (Cal. 1904) (citing *Kortright*, 21 N.Y. 343); *Kelley v. Clark*, 129 P. 921, 924 (Idaho 1912) (collecting cases); 12 David A. Thomas, *Thompson on Real Property* § 101.03(d), at 416 (2008) (collecting cases) ("A timely, but rejected, tender of the debt discharges a mortgage while leaving the debt itself enforceable as an unsecured obligation."). Only the Supreme Court of Oklahoma appears to have cited *Kortright* negatively in any sense, ruling that under the principle that "he who seeks

equity must do equity" a mortgagor whose tender had been rejected could not invoke *Kortright* to quiet title to real property via his own action without offering to pay the underlying debt into court. *See First Nat'l Bank of Ada v. Elam*, 258 P. 892, 899–900 (Okla. 1927). Even if the Nevada Supreme Court would agree, Plaintiff here is surely willing and able to do equity as to the previously rejected superpriority piece of the lien. There is no reason to think the Nevada Supreme Court would disagree with the general principle that tender immediately extinguishes a lien even if rejected—a point of law noted in *Kortright* as well settled since before the Civil War—especially where the states and the Restatement are in agreement. The Nevada Supreme Court has typically followed the Restatement in related contexts in recent years. *See, e.g.*, *In re Montierth*, 354 P.3d 648, 651 (Nev. 2015). The Restatement suggests that not only does a timely, unconditional tender discharge a lien, but also that upon such a tender the lienor must provide an appropriate document indicating that the lien has been released. *See* Restatement (Third) of Property (Mortgages) § 6.4(c) & cmt. c (1997). In the present context, that would appear to mean that an HOA has a duty both to accept a tender of the superpriority piece and to provide a document confirming that the superpriority piece has been satisfied and/or that the remainder of its lien is not in priority to the DOT. *See id.*

### 3. Where the Superpriority Piece is Tendered Prior to Sale, a First Deed of Trust Survives the Sale

The Restatement is in accord with the case law that rejection of a tender is of no effect: "[A] mortgage is extinguished by mere *tender* of full payment by the person primarily responsible for payment, even if the mortgagee rejects it." *Id.* § 6.4 cmt. d.[2] As to the issue of

2 Not only does tender extinguish the relevant lien, but the wrongful rejection of a tender gives rise to a damages action for the costs of any resulting inconvenience: "[T]he tender of full payment *per se* relieves the real estate of the mortgage lien[, and] the mortgagee who wrongfully

whether a first deed of trust survives an HOA sale, it doesn't matter whether a first mortgagee who tenders the superpriority piece is a person "primarily responsible for payment." The Uniform Common Interest Ownership Act, as adopted via Chapter 116, contemplates that payment of the superpriority piece by a first deed of trust holder protects a first deed of trust, because the entire purpose of the superpriority rule is to ensure that HOAs quickly recover the superpriority piece by pressuring first deed of trust holders into paying the superpriority piece before foreclosure on pain of losing a comparatively large security interest. *See SFR Invs. Pool I, LLC*, 334 P.3d at 413 ("As a practical matter, secured lenders will most likely pay the [nine] months' assessments demanded by the association *rather than having the association foreclose on the unit*." (quoting 1994 & 2008 UCIOA § 3–116 cmt. 2) (alteration in original)). The Uniform Law Commission's Joint Editorial Board for Uniform Real Property Acts has itself opined that if the superpriority piece is redeemed prior to the HOA sale, the sale proceeds only on the subpriority piece and transfers title subject to the first mortgage. (*See* Joint Editorial Board Report 12, available at http://www.uniformlaws.org/shared/docs/jeburpa/2013jun1_JEBURPA_UCIOA%20Lien%20Priority%20Report.pdf). The Nevada Supreme Court cited this report in approval in *SFR Investments Pool 1*. *See* 334 P.3d at 413–4 & n.4.

The Restatement confirms that "primary responsibility does not necessarily imply personal liability" but turns on whether one stands to lose something via foreclosure. *See* Restatement (Third) of Property (Mortgages) § 6.4 cmt. a. Even if not "primarily responsible for payment," a first deed of trust holder's tender of the superpriority piece subrogates the superpriority piece to the first deed of trust holder by operation of law. *See id.* cmt. g; *see also,*

---

refuses a tender may be held liable for damages flowing from any unreasonable delay that results in clearing the mortgage from the real estate's title." *Id.*

*e.g.*, *Mosher v. Conway*, 46 P.2d 110, 112–13 (Ariz. 1935). Regardless of whether the superpriority piece is extinguished or subrogated to the first deed of trust holder upon the first deed of trust holder's tender thereof, where such a tender has occurred an HOA sale proceeds only on the subpriority piece, and the first deed of trust is not thereby extinguished. *See* Restatement (Third) of Property (Mortgages) § 6.4 cmt. g. ("[R]edemption by the holder of a junior interest in the real estate operates in essentially the same manner as redemption by one who is primarily responsible for the obligation.").

In summary, the principles of the case law and the Restatement as applied to the present case means that although Defendant remains entitled to the superpriority piece,[3] Plaintiff's tender of the superpriority piece before the sale either extinguished or subrogated the superpriority piece of Defendant's lien such that the DOT, which was in priority to the remaining subpriority piece on which the foreclosure proceeded, survived the sale. The Court finds that there is no genuine dispute that the sale in this case proceeded purely on the subpriority piece of Defendant's lien, and the foreclosure of a lien junior to the DOT cannot have extinguished it. Plaintiff is therefore entitled to summary judgment on its claim for a declaration that Defendant's sale did not extinguish the DOT.

---

3 More accurately, Defendant is probably entitled to a credit for that amount. The subpriority piece would have remained junior to the DOT under NRS 116.3116 under any set of circumstances, and that amount has always been due and owing to Plaintiff since Defendant's foreclosure if not yet remitted. Under the basic rules of priority, as adjusted by NRS 116.3116, the order of distribution of HOA foreclosure sale proceeds (assuming no tax liens or other statutory liens) is: (1) HOA, up to the superpriority amount of the HOA lien; (2) first deed of trust holder, up to the amount secured by the first deed of trust; (3) HOA, up to the remainder (subpriority amount) of the HOA lien; (4) other lienors, in order; and (5) any remaining equity to the homeowner. *See* Nev. Rev. Stat. § 116.3116; Restatement (Third) of Property (Mortgages) § 7.4.

Defendant argues that it was entitled to receive the entire amount of the lien. That statement is true as far as it goes. That is, Defendant was entitled to payment of both the superpriority and subpriority pieces of its lien or it was entitled to foreclose. But satisfaction of the superpriority piece and subsequent foreclosure on the subpriority piece did not extinguish the DOT. Plaintiff redeemed the entire superpriority piece.[4] Plaintiff had no need to redeem the subpriority piece to protect the DOT, because that piece was junior to the DOT. *See SFR Invs. Pool 1, LLC*, 334 P.3d at 411; Restatement (Third) of Property (Mortgages) § 7.1 ("A valid foreclosure of a mortgage terminates all interests in the foreclosed real estate that are junior to the mortgage being foreclosed and whose holders are properly joined or notified under applicable law. Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed."). The question as to protection of a deed of trust under NRS 116.3116 is whether the entire superpriority piece of the HOA lien was tendered, not whether the entire HOA lien was tendered. *See Twenty Eleven, LLC v. Botelho*, 127 A.3d 897, 904 (R.I. 2015) (interpreting Rhode Island's version of the Uniform Condominium Act, which is the same in relevant respects as Nevada's version of the Uniform Common Interest Ownership Act) ("[H]ad the association foreclosed on the sub-priority portion of its lien [alone] defendant's first mortgage would have priority over that portion of the association's lien. Consequently, any purchaser at the foreclosure sale would take the property subject to the defendant's mortgage."). A deed of trust holder need not tender any portion of the subpriority piece to protect its deed of trust any more than a second mortgagee facing foreclosure by a first mortgagee need tender any portion of a third mortgage to protect the second mortgage. It makes no difference whether the

---

4 In another case, this Court granted summary judgment against a first deed of trust holder where there was no dispute it had tendered less than the entire superpriority piece prior to sale. *See Nationstar Mortg., LLV v. SFR Invs. Pool I, LLC*, --- F. Supp. 3d ----, 2016 WL 1718374, at *4 (D. Nev. 2016) (Jones, J.).

first and third mortgages are held by the same entity; such a situation does not elevate the third mortgage to the priority of the first mortgage absent a valid subordination agreement by the second mortgagee. *See Williams, Salomon, Kanner & Damiam v. Am. Bankers Life Assurance Co. of Fla.*, 379 So. 2d 119, 121 (Fla. Dist. Ct. App. 1979). Another judge of this District has ruled that where an association makes clear prior to sale that it is proceeding on the subpriority piece alone, the superpriority piece and the first deed of trust survive the sale. *See Laurent v. JP Morgan Chase, N.A.*, No. 2:14-cv-80, 2016 WL 1270992, at *4–7 (D. Nev. Mar. 31, 2016) (Gordon, J.). In *Laurent*, the HOA explicitly chose to proceed only on the subpriority piece of the lien, whereas here the subpriority piece was the only piece of the lien remaining by operation of law at the time of the sale. The result is the same as to survival of a first deed of trust.

**4. Plaintiff's Potential Remedy Against Avina**

Defendant argues that the previous homeowner, Avina, had a contractual duty under the DOT to protect it, and that Plaintiff's remedy for the loss of the DOT is therefore exclusively against Avina, not against Defendant, which was not a party to the DOT. The Court rejects this argument. Whether Plaintiff had (or still has) a contractual remedy against Avina under the DOT is irrelevant to Plaintiff's ability to protect the DOT through other means. If Plaintiff protected the DOT by tendering the superpriority piece of the HOA's lien before sale—and there is no genuine dispute that it did—it had no need to resort to pursuing Avina for the putative loss of the DOT. Indeed, the DOT has not been lost at all.

**5. Standing**

Defendant argues that Plaintiff lacks standing because the DOT was extinguished before Plaintiff acquired its interest in the DOT, such that Plaintiff suffered no loss. The Court rejects this argument. First, the undisputed evidence shows that the DOT was not in fact extinguished.

Second, even if there remained a factual dispute as to extinguishment of the DOT, Plaintiff would have standing to argue that the DOT was not extinguished. The elements of standing do not depend on ultimate success in litigation but rather on whether a plaintiff alleges or can show a genuine dispute as to (depending on the stage of litigation) facts that would confer standing upon him if true. *See, e.g.*, *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). The loss of a deed of trust in real property is an "injury-in-fact" under Article III because the loss is of a "legally protected interest" that is both "concrete and particularized" and "actual or imminent." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Third, the Court rejects the argument that Avina, not Defendant, caused the foreclosure sale in the sense of Article III standing, i.e., by failing to pay the HOA assessments. Avina's actions may have been necessary to the foreclosure, but they were not sufficient. The foreclosure would not have occurred absent Defendant's actions. Indeed, Defendant is the only entity statutorily permitted to have caused the foreclosure. *See* Nev. Rev. Stat. § 116.31162(1). Defendant cannot argue that the foreclosure was not "fairly traceable" to its own actions. *See Lujan*, 504 U.S. at 560.

**6. Good Title**

Defendant argues that Plaintiff, as holder only of a security interest in the Property, cannot establish good title to the Property and therefore cannot sue to quiet the title. The Court disagrees. It is enough that Plaintiff seeks to establish that its deed of trust is senior to Defendant's trustee's deed. *See* Nev. Rev. Stat. § 40.010 ("An action may be brought by any person against another who claims an estate *or interest* in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." (emphasis added)). The conflict may be over competing estates *or* interests. Courts routinely adjudicate quiet title actions between rival lienors. *See, e.g.*, *A.F. Constr. Co. v. Virgin River Casino Corp.*, 56 P.3d

887 (Nev. 2002). The rule that a claimant in a quiet title action must show good title in himself doesn't mean that the claimant must claim an estate in the land, e.g., fee simple absolute title, but only that he must be able to show his own estate or interest in the land; he cannot simply bring a quiet title action as between two third parties where his own legal interests are not implicated but only a moral interest in the controversy.

**7. Injunctive Relief**

Defendant argues that injunctive relief against further transfer of the Property is not appropriate, because Plaintiff can show no irreparable harm. The Court agrees, but not for quite the same reasons given by Defendant. Plaintiff does not seek an immediate right to possess the Property, but only a declaration that its security interest in the Property remains valid. The Court finds that a declaration that the DOT remains valid against the Property is enough to make Plaintiff whole.

**B. Commercial Unreasonableness**

The Court will not rule at this time under *Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105 (Nev. 2016) (gross inadequacy of sale price plus fraud, oppression, or unfairness) or *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917 (Nev. 1977) (commercial unreasonableness of the sale) because it can resolve the present motions on other issues. If necessary to resolve, the Court would likely put the *Shadow Wood* and *Levers* issues to a jury.

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 18) is GRANTED. Plaintiff shall SUBMIT a proposed form of judgment within fourteen (14) days of the entry of this Order into the electronic docket.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 20) is DENIED.

IT IS SO ORDERED.

Dated this 22nd day of September, 2016.

ROBERT C. JONES
United States District Judge